UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COURTLAND CAPITAL, INC., a Canadian Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 15 cv 5587 ) |
| FIXED INCOME SOLUTIONS, LLC, a Florida limited liability company, | ) Judge Sharon Johnson Coleman ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Courtland Capital, Inc. ("Courtland"), filed a Complaint for breach of contract against defendant, Fixed Income Solutions, LLC ("FIS"), alleging that FIS breached the Amended and Restated Secured Promissory Note and Amended and Restated Loan and Security Agreement entered into by the parties by failing to pay the loan obligation. Courtland moves for summary judgment, arguing that there is no genuine issue of material fact that FIS failed to pay the loans as agreed [11]. For the reasons stated herein, the motion is granted.

**Background**

The following facts are not in dispute. However, FIS asserts that it disputes the legal effect of the undisputed facts. Courtland Capital, Inc., is a Canadian corporation with its principal place of business located in Crossfield, Alberta, Canada. Fixed Income Solutions, LLC, is a limited liability company organized under the laws of the state of Florida with its principal place of business located in Cottonwood Heights, Utah.

On September 24, 2013, the parties entered into a non-binding letter of intent concerning their intent to effect a merger. (Pl.'s 56.1 Statement of Undisputed Facts, Dkt. 13 at ¶5). In anticipation of the proposed merger, the parties entered into a Secured Promissory Note ("Original

1

Note") on October 23, 2013. *Id.* at ¶ 6. Under the terms of the Original Note, Courtland loaned FIS $175,000.00[1] ("Initial Advance"). *Id.* at ¶ 7. On December 23, 2013, Courtland sent a letter to Andrew Kelley, President of FIS, terminating the Original LOI. *Id.* at ¶ 8. The Original Note matured and became payable on December 23, 2013, when the LOI was terminated. *Id.* at ¶ 9. Courtland demanded payment from FIS on December 30, 2013. *Id.* at ¶ 10. FIS did not make any payments. *Id.* at ¶ 11.

On April 21, 2014, the parties entered into a second letter of intent ("New LOI").[2] *Id.* at ¶ 12. Courtland and FIS entered into an Amended and Restated Loan and Security Agreement ("Amended Loan Agreement") on April 30, 2014. *Id.* at ¶ 13. Pursuant to the Amended Loan Agreement, Courtland agreed to waive its demand for repayment of the Original Note and reinstate the Initial Advance. *Id.* at ¶ 14. Courtland agreed to advance FIS $75,000.00 upon execution of an Amended and Restated Secured Promissory Note ("Amended Note"). *Id.* at ¶ 15. Courtland also agreed to advance to FIS an additional $50,000.00 upon receipt of all FIS financial statements. *Id.* at ¶ 16. Courtland made both advances to FIS, equaling $125,000.00 plus the Initial Advance of $175,000.00, for a total of $300,000.00. *Id.* at ¶ 17. Each advance was subject to accruing interest at a rate of seven percent per year. *Id.* at ¶ 18. As security for the three advances, FIS gave Courtland a security interest in all present and after acquired assets of FIS, including accounts, inventory, equipment, and intellectual property. *Id.* at ¶ 19. The Amended Note provided that the advances made by Courtland to FIS would become due and payable at the earliest date of several events, one of which was the termination of the New LOI. *Id.* at ¶ 20.

On June 12, 2015, Courtland terminated the New LOI by letter to Mr. Kelley at FIS. *Id.* at ¶ 21. Also on June 12, 2015, Courtland sent FIS notice of Courtland's demand for immediate payment of the total advances made under the Amended Loan Agreement, plus accrued interest. *Id.* at ¶ 23.

---

[1] All funds referred to in this Memorandum Opinion and Order are in Canadian dollars.
[2] The Court adopts the parties' nomenclature for abbreviating terms.

2

FIS has not responded to either of Courtland's June 12, 2015, communications and has not made any payments under the Amended Loan Agreement. *Id.* at ¶ 24. FIS does not dispute that Courtland has demanded payment, including interest, but FIS disputes that it legally owes Courtland on the agreements. FIS does not dispute that Courtland alleges that FIS owes $329,988.77 on all three advances, and that FIS has not paid Courtland this amount. *Id.* at ¶ 34.

FIS communicated to Courtland prior to and during the first and second negotiations that FIS required an infusion of working capital in an amount no less than $1,000,000.00 at the time of any merger and that FIS believed the $1,000,000.00 was a prerequisite to any business deal with Courtland. (Def. Rule 56.1 Statement of Additional Facts, Dkt. 31 at 6). FIS understood the delivery of $175,000.00 to be the first payment of working capital to be contributed to FIS by Courtland. *Id.* at ¶ 7. FIS could not remain in business without the infusion of working capital. *Id.* at ¶ 8. Courtland was aware that FIS needed an infusion of capital to continue operating. *Id.* at ¶ 10-12. At the time Courtland terminated the second LOI it had less than $300,000.00 case deposited at ATB Securities, Inc. *Id.* at ¶ 14. During the time between the second LOI being entered and then terminated, Courtland never contributed any additional working capital other than the loan advance at issue in this dispute nor did it raise money from public sources to invest in FIS. *Id.* at ¶ 15. The instant lawsuit followed for breach of contract based upon FIS's failure to pay on the loan agreements.

**Legal Standard**

A party is entitled to summary judgment if all of the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere

3

speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

**Discussion**

Courtland moves for summary judgment on its breach of contract claim, arguing that FIS failed to pay as agreed upon in the Amended and Restated Secured Promissory Note and Amended and Restated Loan and Security Agreement pursuant to which Courtland had advanced FIS $300,000.00 in anticipation of the parties' merger. FIS asserts that Courtland did not have sufficient capital on hand to invest the working capital FIS needed to continue operating after execution of the proposed merger. The parties agree that Utah and Delaware law apply to this issue.

To prevail on its breach of contract claim under either Utah or Delaware law, Courtland must establish the existence of a valid and enforceable contract, FIS's breach of that contract, and resulting damages. *See VLIW Technology, LLC v. Hewlett-Packard Co.,* 840 A.2d 606, 612 (Del. 2003); *Am. West Bank Members, L.C. v. State,* 342 P.2d 224, 230-31 (Utah 2014). Instead of arguing that there was no valid and enforceable contract with reference to legal authority and record evidence indicating as much, FIS argues that there are factual issues relating to whether Courtland would have been able to raise the $1,000,000.00 in working capital that it said it would to effectuate the merger. This argument however is beside the point. FIS makes no argument addressing the elements of a breach of contract claim.

As part of the negotiation process, Courtland and FIS entered two non-binding letters of intent as well as two promissory notes. It is undisputed that Courtland made three advances to FIS, totaling $300,000.00, based on these documents in anticipation of the parties' eventual merger. The first non-binding letter of intent entered into by the parties specifically addressed the issue of working capital:

4

> 1. a. Courtland *anticipates* having approximately $1,100,000.00 in cash at the closing less amounts forwarded to FIS hereunder, and other legal and regulatory costs incurred as part of the Transaction or under required regulatory compliance. Such capital would be used to develop and expand the FIS sales.
> b. Courtland may consider raising capital through an equity financing of up to $1 million concurrently with the Transaction if agreed upon by Courtland and FIS.
> \*\*\*
> 7. <u>Due Diligence</u>: Upon acceptance this LOI and the execution of mutually acceptable confidentiality agreements, Courtland and FIS will commence due diligence investigations on the each [sic] other entity. \*\*\* The Transaction is subject to both parties completing satisfactory due diligence.

(emphasis added) (Dkt. 11-2, Exhibit B). The New LOI dated April 21, 2014, contains similar language but reduces the amount from $1,100,000.00 to $600,000.00, presumably to account for the funds already advance to FIS by Courtland. (Dkt. 11-2, Exhibit G). Based on these provisions of the letter of intent, FIS has not shown any material misrepresentation by Courtland and reasonably relied upon by FIS or a lack of meeting of the minds that would negate the existence of an agreement. This is particularly true where the agreements at issue are the loan agreements. FIS does not dispute that it entered the loan agreements nor does it dispute that it did not pay on the loans.

The Amended and Restated Loan and Security Agreement contemplated the advances that Courtland tendered to FIS: the Initial Advance of $175,000.00 ("Such amount remains outstanding and has been accruing interest since such advance and is deemed to be part of the aggregate loan to be advanced hereunder"); the Second Advance of $75,000.00; and the final advance of $50,000.00. (Dkt. 11-2, Ex. F at ¶ 3(a)-(c)). The Amended and Restated Loan and Security Agreement also contains a provision for "Events of Default" that includes failure to pay the principal amount of or interest on the Note, when due and payable as set forth in the Note. The Amended Note provides that the principal amount and the accrued interest becomes due and payable on "the termination of the Letter of Intent ("LOI") dated April 21, 2014". (Dkt. 11-2, Ex. A at ¶ 2). The Amended Note also sets forth what constitutes default:

> Without notice or demand of any kind (which are hereby waived), the entire unpaid Principal Amount hereof, together with all accrued and unpaid interest hereon, shall

> immediately become due and payable at the option of the Holder hereof upon the occurrence of any one or more of the following events of default (individually or collectively, herein called a 'Default'):
> (a) The failure or refusal of Debtor to pay in full any amount of the Principal Amount or interest on this Note as and when the same becomes due and payable in accordance with the terms hereof;
> ….

(*Id.* at ¶7). FIS does not dispute that Courtland terminated the Letter of Intent or that FIS did not make any payment on the Amended Note. Accordingly, this Court finds that FIS breached the Amended and Restated Loan and Security Agreement by failing to pay on the Amended Note rendering it in default.

Although FIS argues that it has viable affirmative defenses to Courtland's breach of contract claim, it raised none on summary judgment nor has it presented any evidence to create a genuine issue of material fact as to any affirmative defense. Based on the foregoing discussion, this Court grants Courtland's Motion for Summary Judgment [11] and enters judgment in favor of plaintiff. IT IS SO ORDERED.

Date: March 1, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge